**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals

## For the First Circuit

No. 02-1448

UNITED STATES OF AMERICA,

Appellee,

v.

ISRAEL NAVEDO-CONCEPCIÓN,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvadore E. Casellas, U.S. District Judge]

Before

Boudin, Chief Judge,
Baldock,* Senior Circuit Judge,
and Howard, Circuit Judge.

Peter Goldberger with whom Pamela A. Wilk was on brief for appellant.
Nelson Pérez-Sosa, Assistant United States Attorney, with whom H.S. Garcia, United States Attorney, and Sonia I. Torres-Pabón, Assistant United States Attorney, was on brief for appellee.

August 26, 2003

---

*Of the Tenth Circuit, sitting by designation.

**BALDOCK**, <u>**Senior Circuit Judge**</u>.   In November 1999, a Puerto Rico grand jury returned a single-count indictment charging Defendant, Israel Navedo-Concepción, also known as "Gallo," and seven other named co-defendants with conspiracy to possess with the intent to distribute cocaine in amounts which exceed five (5) kilograms and heroin in amounts which exceed one (1) kilogram, in violation of 21 U.S.C. § 846.   The indictment alleged a four-year conspiracy between the named defendants and others unknown to the grand jury to distribute narcotics in the La Perla section of Old San Juan.   All named co-defendants pled guilty pursuant to plea agreements.   Defendant, however, proceeded to trial.   Following a seven-day trial, the jury convicted Defendant of the sole count in the indictment.   The district court sentenced Defendant to 151 months imprisonment.

Defendant appeals, arguing (1) the district court erred by failing to sua sponte deliver a limiting instruction on the use of prior inconsistent statements by a witness; (2) the prosecutor's improper remarks during closing argument warrant a new trial; (3) the district court plainly erred by instructing the jury about the content of a witness' testimony; (4) the district court erred by not making an independent relevant conduct finding as to the drug quantity attributable to Defendant; and (5) the district court erred by failing to give a reason pursuant to 18 U.S.C. § 3553(c) for imposing a sentence at the top of the guideline range.   The

parties are familiar with the facts of the case, and we will not repeat them here except where necessary. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the district court on Defendant's first four issues. But we remand for resentencing in accordance with § 3553(c) due to the district court's failure to state in open court reasons for the selected sentence.

A.

Defendant first argues the district court erred by failing to sua sponte give a limiting instruction on how the jury should treat a witness' prior inconsistent statements. Because defense counsel did not object, Defendant concedes we review this issue for plain error. Under the four-part plain error inquiry, (1) an error must have been committed; (2) the error must be plain or obvious; (3) the plain error must affect substantial rights, which generally means that it must have been prejudicial; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. See United States v. Pena-Lora, 225 F.3d 17, 29 (1st Cir. 2000) (citing United States v. Olano, 507 U.S. 725, 732-33 (1993)).

On direct examination, defense witness Luis Mojica Bultron ("Bultron") testified under oath that he did not recognize Defendant, that he did not sell drugs for Defendant, and that he had not seen Defendant selling drugs in La Perla. This testimony contradicted the testimony of the Government's witness, Catherine

Rivera Valle ("Valle"), who testified she and Bultron bought drugs from Defendant. On cross examination, Bultron acknowledged he had heard of a person nicknamed "Gallo", but denied that he told FBI agent Scott Nielson in interviews that "Gallo" sold narcotics or that he had personally purchased heroin from Gallo. Bultron also denied he told Sgt. Pablo Quiñones or other law enforcement officials that Gallo sold "champagne"[1] heroin. Bultron admitted on cross examination that he told agents of a meeting that a man known as "Sandro" called and that someone named "Gallo" attended. Bultron also admitted he had seen Defendant in a picture shown to him by law enforcement, but stated he was unsure whether the picture shown to him at trial was the same picture.

In response to this testimony, the Government called Sergeant Pablo Quiñones in rebuttal. Quiñones testified that, during an interview, he had shown Bultron a photograph of Defendant and Bultron identified Defendant as "Gallo." Quiñones also testified that Bultron told him in an interview that Gallo would meet with others to form an enterprise and to discuss the drug trade in La Perla. Quiñones also testified that Bultron told him that "Gallo" sold champagne heroin.

Under Fed. R. Evid. 801(d)(1)(A), a declarant's prior inconsistent statements are hearsay and inadmissible as substantive

---

[1]"Champagne" heroin refers to the color of packaging in which the heroin was wrapped, and champagne heroin apparently was of superior quality.

evidence unless they were made "under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or at a deposition." Fed. R. Evid. 801(d)(1)(A); see also Finn v. Consolidated Rail Corp., 782 F.2d 13, 16 n.4 (1st Cir. 1986).[2] Bultron's statements to Quiñones were not made under oath at a trial or like proceeding, but rather in interviews with law enforcement authorities. Thus, Quiñones' testimony was inadmissible for the truth of the matter asserted. Defendant concedes, however, the testimony was admissible as impeachment evidence. See United States v. Winchenbach, 197 F.3d 548, 558 (1st Cir. 1999) (concluding a witness' prior inconsistent statement is admissible to attack the witness' credibility under Fed. R. Evid. 613(b)). Despite this concession, Defendant argues the district court had a duty to sua sponte deliver a limiting instruction informing the jury that they could not consider Bultron's prior inconsistent statements for their truth, but only as they bore on his credibility.

We do not find plain error in the trial court's failure to sua sponte deliver a limiting instruction in this circumstance. Pursuant to Fed. R. Evid. 105-

---

[2]Defendant notes that under Rule 801(d)(1)(C), a prior statement by a witness is not hearsay if it was "one of identification of a person made after perceiving the person." Consequently, Defendant agrees Quiñones' testimony that Bultron previously identified the person in the photograph as "Gallo" was not hearsay, and thus could be considered substantively by the jury.

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

Id. (emphasis added). Based on the Rule's language, we previously have concluded that the failure to request an instruction waives the argument on appeal. United States v. Mateos-Sanchez, 864 F.2d 232, 238 (1st Cir. 1988). Consequently, Defendant's arguments that the district court erred at all, or that the error was plain and obvious, are questionable.

But even assuming the district court plainly erred, the alleged error does not seriously affect the fairness, integrity or public reputation of judicial proceedings. The jury heard both of Bultron's statements and was able to observe both his demeanor and Quiñones' demeanor. Both witnesses were subject to direct and cross examination. The offered testimony did not concern Defendant's prior convictions or prior uncharged acts, and was not highly inflammatory or so prejudicial that the district court should have offered a limiting instruction absent a request from the defense. Compare United States v. DeGeratto, 876 F.2d 576, 584 (7th Cir. 1989) (suggesting in dicta that even if cross examination about uncharged prior bad acts was properly admitted under Fed. R. Evid. 404(b), district court had a duty to sua sponte offer a limiting instruction on highly prejudicial testimony); Dawson v. Cowan, 531 F.2d 1374, 1377 (6th Cir. 1976) (finding plain error in

the failure to give a limiting instruction regarding evidence of a prior conviction for attempted rape where the defendant was facing both a principal charge of attempted rape and a habitual offender charge). We find no special circumstances in this case that would require the district court to sua sponte offer a limiting instruction. See United States v. Malik, 928 F.2d 17, 23 (1st Cir. 1991) (finding no plain error where district court did not sua sponte offer a limiting instruction on law enforcement agent's testimony that defendant made statements to agent inconsistent with defendant's trial testimony).

B.

Defendant next argues the prosecutor made improper closing arguments by misrepresenting the evidence and vouching for a witness.

1. Misrepresentation of Evidence

Defendant first contends that, in closing argument, the prosecutor misrepresented Bultron's testimony. The prosecutor stated that although Bultron was evasive and hesitant to answer questions, he eventually testified that he knew Gallo, and knew Gallo ran a drug business. Defense counsel objected to this characterization, to which the district court stated, "Let's move on." The prosecutor then continued and stated that Bultron testified Gallo's product was champagne. The prosecutor also stated Bultron admitted he knew that Gallo, Sandro, and the rest of

-7-

the "committee" had Friday meetings in which they organized the La Perla drug trade.

"This Court has fashioned a three prong test for examining whether the prosecution's misconduct 'so poisoned the well' that the trial's outcome was likely affected, thus warranting a new trial." United States v. Joyner, 191 F.3d 47, 54 (1st Cir. 1999). "We examine: (1) whether the prosecutor's conduct was isolated and/or deliberate; (2) whether the trial court gave a strong and explicit cautionary instruction; and (3) whether it is likely that any prejudice surviving the judge's instruction could have affected the outcome of the case." Id. Where Defendant timely objected, we review de novo the question of whether the comment was improper and review for abuse of discretion the question whether the misconduct, if any, warrants a new trial. United States v. Hernandez, 218 F.3d 58, 68 (1st Cir. 2000). Where the defendant has not objected, we review for plain error. Id. at 69.

The record reveals some of the prosecutor's statements about Bultron's statements were not fully supported by the testimony. Bultron did not testify that he knew "Gallo," although he eventually admitted under cross examination that he previously told an FBI agent that he knew someone named Gallo who lived in Wipe Out and operated a store there. Bultron did not testify about Friday meetings as stated by the prosecutor, nor did Quiñones

-8-

testify that Bultron previously told agents about Friday committee meetings. Only Valle testified about Friday meetings. Bultron also did not testify that he observed any committee meetings or that Gallo attended those meetings, or that the meetings concerned running the drug trade in La Perla. On cross examination, he admitted he previously told agents about two meetings Sandro called which "Gallo" attended. The prosecutor did not inquire into the substance of the meetings, however. Thus, no testimony was produced that the meetings to which Bultron was referring involved discussions about the rules of the La Perla drug trade as the prosecutor stated in closing argument. And Bultron denied that he knew Gallo sold champagne or heroin or that he personally purchased drugs from Gallo, contrary to the prosecutor's closing statements. He further denied that he told agents this information. The prosecutor seemed to discuss Quiñones' testimony that Bultron made these statements to agents in earlier interviews as if the statements were Bultron's live testimony. Thus, the prosecutor's statements about Bultron's testimony misstated the record in some respects.

We agree with Defendant these comments were improper. But we do not find sufficient prejudice to warrant a new trial. Defendant presented no evidence the prosecutor's conduct was deliberate, and the misstatements were isolated to this one witness. The witness' testimony was less than clear on some

points, and the witness was impeached by prior statements to investigators. Thus, the prosecutor may have innocently, albeit negligently, confused Bultron's live testimony and the impeachment testimony. In final instructions, the district court instructed the jury as follows:

> The statements that the lawyers made are not to be considered by you either as evidence in the case, which comes only from witnesses and exhibits, or as [] instruct[ions] on the law, which will come only from me. These statements and arguments are intended to help you understand the issues and the evidence as it comes in, as well as the positions taken by both sides.

Although not contemporaneous, the instruction informs the jury that the statements of the lawyers are not evidence. We conclude the misstatements were not so egregious, inflammatory, or pervasive that they could have affected the outcome of the case.[3]

2. Vouching

Defendant also challenges comments during the prosecutor's closing arguments which he alleges constitute improper vouching for a witness and for the Government's overall case. During closing argument, defense counsel suggested witness Jose Mercado Febles lied about a meeting among drug dealers on Thanksgiving Day which Defendant allegedly attended. Defense

---

[3]Defendant also asserts the prosecutor misrepresented the testimony of Valle and Quiñones. After reviewing the record, we conclude the prosecutor's description of these witnesses' testimony constituted reasonable argument based on the actual testimony.

counsel argued Febles was lying about this meeting because Febles claimed another dealer, Papo Aviles, was present at the meeting when Aviles actually was in jail on Thanksgiving Day. In response to this argument, the prosecutor argued defense counsel was misreading and misinterpreting the testimony, and thus Febles "had not lied." Defendant admits he did not object to the prosecutor's statement in closing argument that Febles "did not lie." Thus we review this issue for plain error.

The prosecutor's choice of words was unfortunate. What the prosecutor meant was that the defense had not shown Febles lied. According to the prosecutor's view of the testimony, Febles did not testify that Aviles was at the Thanksgiving Day meeting. Hence his testimony was not contradictory with Aviles being in prison on Thanksgiving Day. While we caution prosecutors to be more careful in their choice of words, we do not find this comment affected Defendant's substantial rights, nor seriously affects the fairness, integrity or public reputation of judicial proceedings. The comment was isolated to one statement regarding one witness, and the meaning of the comment was not the usual vouching problem where the prosecutor assures the jury the witness is telling the truth. See United States v. Figueroa-Encarnacion, 335 F.3d 28, 33 (1st Cir. 2003) (defining the "archetypal example of vouching" as "a prosecutor's claim that the witness should be believed because the prosecutor–a representative of the government–believes the

witness . . . ."). Rather, the prosecutor argued the defense was mischaracterizing Febles' testimony. Instead of stating Febles "did not lie," the prosecutor should have said the defense had not caught Febles in an obvious lie.

Defendant also challenges the prosecutor's comments in closing argument that the Government had presented only a "sample" of the evidence. Specifically, the prosecutor argued--

> And what my colleague Miss Sulzbach told you in her opening statement is that she would give you a sample, an opportunity to hear from three people who would tell you about the drug trade in La Perla.
> . . .
> What you heard from the government ladies and gentlemen was a sample, if you think this week trial was long, if we had brought in every one that knew about drugs in La Perla we would have been here for months.
> . . .
> You have to realize that what the government brought you was a sample. It wasn't a day to day record of everything that went on in La Perla drug world. It was a sample and that is all we are asking you consider, this sample of activity in La Perla drug world involving the defendant and the [other] individuals involved in this committee or this group.
> . . .
> And you saw a sample, not only the drug dealings that went on but just a very small portion and the government has proven its case beyond a reasonable doubt.

In response, defense counsel in closing argued if this was just a "sample," the Government should have introduced more compelling evidence of Defendant's participation in the drug trade, such as video, photographs, or tape recordings of controlled buys.

The prosecutor's use of the "sample" language constitutes error. A prosecutor may not suggest to the jury that the Government has more evidence establishing a defendant's guilt than it has presented to the jury. See United States v. Balsam, 203 F.3d 72, 88 (1st Cir. 2000) ("[A] prosecutor may not . . . indicate that facts outside the jury's cognizance support the testimony of the government's witnesses.") (internal quotation and citation omitted). Although a close case, we conclude the prosecutor's ill advised statements did not prejudice Defendant, nor seriously effect the fairness, integrity or public reputation of judicial proceedings.

Most of the comments suggested the evidence presented was just a sample of the overall drug scene in La Perla and the overarching investigation of the drug trade in La Perla, without specifying that the Government had more information specifically going to Defendant's guilt. In reaching a verdict, the jury necessarily had to accept or reject the testimony of the Government's cooperating witnesses. The prosecutor's "sampling" comments made in closing argument likely did not weigh heavily in this determination. Either the jury believed the witnesses who testified they bought from or sold drugs to Defendant, or they did not. Further, defense counsel was able to effectively use this "sampling" language in closing argument, further reducing any potential prejudice. While we harshly condemn the Government's

comments in this case, we cannot say on plain error review that the comments warrant reversal.

## C.

Defendant next argues the trial court committed plain error in instructing the jury when it asserted as fact that witness Bultron testified he viewed a photograph of Defendant shown to him by law enforcement officers. Defendant concedes he did not object to the challenged instruction, and hence we review for plain error. At the close of the case, the court instructed the jury–

> No[w], witness Luis Mojica Bult[r]on testified that he viewed a photograph of the defendant Israel Navedo Concepcion which was shown to him by a law enforcement officer. The police collect pictures of many people from many different sources and for many different purposes. The fact that the police or a law enforcement officer had defendant's picture does not mean that he committed this or any other crime, and it must have no effect on you[r] consideration of this case.

Defendant now claims Bultron did not testify that he had identified Defendant from a photograph shown to him by law enforcement officers, and thus the district court's instruction erroneously resolved a contested factual issue.

The district court did not misstate the evidence. Bultron did in fact testify that he "viewed a photograph of the defendant Israel Navedo Concepcion which was shown to him by a law enforcement officer." Under questioning by defense counsel,

-14-

Bultron denied he had seen Defendant in person, but admitted to seeing him in a photograph:

> Q: Sir, tell the jury when was the first time that you saw this gentleman?
> A: The first time?  Today.
> Q: And before today?
> A: Before today I had been shown a photo.
> Q: Who showed you a photo?
> . . .
> A: The photo I saw it for the first time at the C.I.C. in San Augustine.
> . . .
> Q: And after that first time, when was the next time if any other time?
> A: Second time was at the Department of Justice.
> Q: I ask you if any federal agent has shown you a photo of my client?
> A: Scott.
> . . .
> Q: Where was that, that Scott showed you a photo of my client?
> A: That was in the office of Domingo Alvarez.
> . . .
> Q: On that third occasion, who showed you the photo of my client?
> A: It was another federal agent, I was brought.

Following this colloquy, Bultron testified that the agents asked whether he recognized the individual in the photographs, and he told the agents he did not.  Thus, Bultron did testify that law enforcement authorities showed him a photo of Defendant, as the district court's instruction indicated.  A separate question existed about whether Bultron identified the person in that photo as "Gallo" the drug dealer from La Perla, but the district court's instruction did not speak to that issue.  The district court did

-15-

not misstate the evidence or decide a contested fact issue for the jury, and thus did not plainly err.

D.

Defendant next argues the district court erred by relying on the jury verdict for the amount of cocaine and heroin attributable to Defendant as relevant conduct at sentencing. In a drug conspiracy case, the jury should determine the existence of the conspiracy as well as any facts about the conspiracy that will increase the possible penalty for the crime of conviction beyond the default statutory maximum. Derman v. United States, 298 F.3d 34, 42 (1st Cir. 2002). But the judge should determine, at sentencing, the particulars regarding the involvement of each participant in the conspiracy. Id. at 43. "This means that once the jury has determined that the conspiracy involved a type and quantity of drugs sufficient to justify a sentence above the default statutory maximum and has found a particular defendant guilty of participation in the conspiracy, the judge lawfully may determine the drug quantity attributable to that defendant and sentence him accordingly (so long as the sentence falls within the statutory maximum made applicable by the jury's conspiracy-wide drug quantity determination)." Id. Defendant thus contends that while the jury could find the overall conspiracy involved amounts exceeding those charged in the indictment, the district court failed to make an individualized determination of what drug

-16-

quantities were reasonably foreseeable to Defendant specifically, and thus attributable to him as relevant conduct.

We disagree. The district court instructed the jury in such a way that the jury had to find Defendant personally responsible for the amounts charged in the indictment to find Defendant guilty of the overall conspiracy. After instructing the jury about the elements of conspiracy, the district charged the jury as follows:

> The crime of conspiracy is complete upon the agreement to commit the underlying crime.
> The underlying crime is possession with intent to distribute a controlled substance. Israel Navedo Concepcion is accused of conspiring with others to possess with the intent to distribute to someone else cocaine, in an amount exceeding five kilograms and heroin in an amount exceeding on[e] kilogram from on or about 1995 until the date of the indictment. . . . For you to find Israel Navedo Concepcion guilty of this crime you must be convinced beyond a reasonable doubt:
> First, that from on or about 1995 until the date of his indictment, <u>Israel Navedo Concepcion possessed cocaine, in an amount exceeding five kilograms and heroin, in an amount exceeding one kilogram, either actually or constructively.</u>
> <u>Second, that he did so with the specific intent to distribute the specified amounts of cocaine and heroin over which he had actual or constructive possession</u>; and
> Third, that he did so knowingly and intentionally.

(Emphasis added). Based on these instructions, the jury had to find Defendant personally possessed with intent to distribute over five kilograms of cocaine and over one kilogram of heroin. By

-17-

finding Defendant guilty, the jury made these factual findings against Defendant.

Even if the district court were at liberty to attribute a lesser drug quantity to Defendant for sentencing purposes, the district court expressed its belief that Defendant was personally responsible for the drug quantities alleged in the indictment:

> . . . I presided over this trial and I have no question in my mind after viewing all of the evidence and all of the witnesses and the jury having found on this, but I as presiding judge have no qualms or question whatsoever that this defendant should be held accountable for a minimum of the amount [charged] in the indictment.  For a minimum.

Thus, even were we to conclude the district court must make a particularized finding of the drug amount for which Defendant was personally responsible, the district court made that finding.  A remand for the district court to reiterate its finding would be an empty gesture.

### E.

Finally, Defendant argues the district court erred by failing to state its reasons for sentencing Defendant at the top end of the guideline range.  The district court determined the guideline range was 121-151 months, and then imposed the maximum sentence.  Title 18 U.S.C. § 3553(c) requires the sentencing court to explain how it determined the applicable guideline range and, if that range exceeds twenty-four months, why it selected the

particular point it did within that range.[4]  The Government concedes the district court did not state any reasons supporting its selected sentence at the top of the guideline range as required.  Accordingly, we remand to the district court for resentencing in compliance with § 3553(c).  See United States v. McDowell, 918 F.2d 1004, 1012 (1st Cir. 1990) (remanding for resentencing where district court made no findings pursuant to § 3553(c) to support a four level adjustment for organizer/leader status).

For the foregoing reasons, we AFFIRM the district court in all respects except for its failure to state reasons for its selected sentence.  As to that issue, we REMAND for resentencing.

---

[4]Section 3553(c) provides--
(c) Statement of reasons for imposing a sentence. The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence--
(1) is of the kind, and within the range, described in subsection (a)(4), and that range exceeds 24 months, the reason for imposing a sentence at a particular point within the range; . . . .