# United States Court of Appeals
## For the First Circuit

No. 99-2096

UNITED STATES OF AMERICA,

Appellee,

v.

PARAMJIT SINGH,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

Before

Selya, Circuit Judge

Coffin and Cyr, Senior Circuit Judges.

Brian T. Tucker and Rath, Young and Pignatelli Professional Association on brief for appellant.
Paul M. Gagnon, United States Attorney, and Jean B. Weld, Assistant United States Attorney, on brief for the United States.

July 28, 2000

**SELYA, Circuit Judge.** A jury found defendant-appellant Paramjit Singh guilty of (a) making a false statement to a government agency (in an application for a Social Security card), and (b) possessing a counterfeit immigration document. See 18 U.S.C. §§ 1001(a)(2), 1546(a). Singh appeals. We affirm.

## I.

### Background

We elucidate the relevant facts in the light most favorable to the government, consistent with record support. See United States v. Houlihan, 92 F.3d 1271, 1277 (1st Cir. 1996); United States v. Spinney, 65 F.3d 231, 233 (1st Cir. 1995).

On March 24, 1998, the appellant, a nineteen-year-old citizen of India, entered the United States on a tourist visa. This visa bore an Immigration and Naturalization Service (INS) B2 classification and authorized the appellant to remain in the United States for six months as a visitor for pleasure, but forbade him to work. Shortly before landing in the United States, the appellant received an INS arrival/departure form (known as an I-94 form) that likewise reflected a B2 classification.

The appellant stayed for a time with relatives in Delaware. On September 17, he went to the Wilmington branch office of the Social Security Administration (accompanied by an aunt), signed an application indicating that he was a "Legal Alien Not Allowed to Work," and procured a Social Security card that, consistent with his visa and his B2 classification, prohibited him from gainful employment. He apparently used this Social Security card to obtain driver's licenses.

The appellant overstayed his allotted six months and remained illegally in the United States after his visa expired. On March 11, 1999, he repaired to the Globe Agency in Brooklyn, New York, paid that firm $300, and left his passport. Eight days later, he returned. A representative of the agency handed over his passport, a counterfeit I-94 form, and a completed application for a Social Security card that linked the appellant to an unfamiliar mailing address in Nashua, New Hampshire. The I-94 form showed a bogus Q1 classification[1] and a fictitious visa expiration date of September 1999. To make matters worse, it falsely described the appellant as a legal alien permitted to work.

---

[1]This classification is intended to describe an alien who entered the United States as a participant in a cultural exchange program.

The appellant then entered a van supplied by the Globe Agency and was transported, along with several other aliens, to a Social Security branch office in New Hampshire. Upon arrival, he signed the pre-prepared application (which, among other things, indicated that he was a "Legal Alien Allowed to Work"), presented the phony documents to Amy Gauvreau (a clerk at the local Social Security office), and sought the issuance of a work-permitting Social Security card. The scheme backfired, however, because Gauvreau became suspicious and called INS agents to the scene. INS agent Kevin Clouthier arrested the appellant after a brief interrogation in which the appellant conversed in comprehensible English.

Although the appellant did not testify at trial, the defense presented evidence designed to show that the appellant lacked guilty knowledge. This evidence included testimony by the appellant's aunt that she spoke in the Punjabi tongue when communicating with him because of his poor command of English, and that she had assisted him in obtaining his first Social Security card because he lacked proficiency in English. In a similar vein, the defense adduced testimony from a psychologist to the effect that the appellant had a "borderline to low average" ability to understand documents written in English. Finally, the defense noted that the fake I-94 form had been

tucked into the appellant's passport, and intimated that the Globe Agency had inserted it there without his knowledge.

Asserting that the evidence as a whole failed to establish guilty knowledge, the appellant moved for a judgment of acquittal. See Fed. R. Crim. P. 29(a). The district court denied the motion, and the jury returned guilty verdicts on both counts. The district court subsequently imposed a six-month home-confinement sentence, levied a $250 special assessment, and placed the appellant on probation for two years. This appeal followed.

## II.

### Discussion

The appellant advances two assignments of error. First, he challenges the sufficiency of the evidence. Second, he protests the district court's decision to instruct the jury on willful blindness. We consider these points sequentially.

### A.

### Sufficiency of the Evidence

The appellant maintains that his motion for judgment of acquittal should have been granted because the evidence failed to establish his guilty knowledge. We review the denial of a motion for judgment of acquittal de novo. See United

States v. Staula, 80 F.3d 596, 604 (1st Cir. 1996).  Where, as here, such a motion is premised on a claim of evidentiary insufficiency, it will necessarily fail if the proof, viewed in the manner most congenial to the government's theory of the case, allows a rational jury to find the defendant guilty beyond a reasonable doubt.  See id.  Such a finding may, of course, be predicated in whole or in part on circumstantial evidence.  See Spinney, 65 F.3d at 234.

We start with the appellant's argument as it pertains to the counterfeit I-94 form and the consequent violation of section 1546(a).[2]  While there is no direct evidence that the appellant knew that the Globe Agency had supplied him with an apocryphal document, the circumstances strongly suggest that he went there for that very purpose.  This inference is bolstered by the appellant's colloquy with Agent Clouthier which, although oriented more toward discovering the genesis of the ersatz form

_____

[2]The statute of conviction provides in pertinent part:

Whoever knowingly . . . uses, attempts to use, possesses, obtains, accepts or receives any [immigrant or non-immigrant] visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeit, altered, or falsely made [shall be punished as provided].

18 U.S.C. § 1546(a).

than the state of the appellant's knowledge, nonetheless supports an inference that the fraudulent nature of the documentation came as no surprise to the appellant.

We need not tarry. The jury had before it the appellant's admission (to Clouthier) that he purchased the counterfeit I-94 form and presented it in New Hampshire. The receipt for it was found on the appellant's person. Moreover, the jury had before it evidence of a furtive course of conduct (e.g., the appellant's payment of a substantial fee and his travel to a place with which he had no apparent connection to apply for a card that was readily available elsewhere) and evidence that the document flatly contradicted the limitations contained in the appellant's visa. On this record, inferring the appellant's guilty knowledge from the available circumstantial evidence fell well within the scope of the jury's authority to evaluate the proof and determine its impact. See, e.g., Staula, 80 F.3d at 604; Spinney, 65 F.3d at 234; United States v. Olbres, 61 F.3d 967, 971 (1st Cir. 1995).

The appellant's argument in respect to the "false statement" conviction runs along much the same lines — and it meets the same fate.[3] He again emphasizes his lack of facility

_____

[3]The statute of conviction provides in pertinent part:

[W]hoever, in any matter within the jurisdiction of

-8-

with the English language and insists that the evidence failed to establish his guilty knowledge.  In his view, the evidence suggests that he stumbled upon the Globe Agency and unwittingly purchased bogus documents, unaware that they falsely portrayed him as a legal alien allowed to work.

To the extent — if at all — that this is a plausible argument, it certainly is not a compelling one.  A rational jury logically could conclude that the evidence, including testimony that the appellant had communicated intelligently with Agent Clouthier, demonstrated that he had a better grasp of English than his attorney professed.  On this record, we cannot say that the jury was barred from concluding (as it apparently did) that the appellant purposefully approached the Globe Agency and that he knew enough to discern the obvious differences in respect to his work status between his first Social Security application and the one he submitted in New Hampshire.  See United States v.

---

the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
. . . .

(2) makes any materially false, fictitious, or fraudulent statement or representation . . .
. . . .

shall be [punished as provided].

18 U.S.C. § 1001(a)(2).

O'Brien, 14 F.3d 703, 707 (1st Cir. 1994) (holding that a jury may "credit particular testimony, while discounting other testimony that arguably points in a different direction").

**B.**

**Willful Blindness**

We turn now to the appellant's second assignment of error. The district court, over the appellant's timely objection, gave a willful blindness instruction. The appellant insists that no such instruction was warranted. We disagree.

A willful blindness instruction is justified when the defendant claims to lack guilty knowledge, yet the evidence, taken in the light most favorable to the government, suffices to support an inference that he deliberately shut his eyes to the true facts. See United States v. Gabriele, 63 F.3d 61, 66 (1st Cir. 1995). Even then, however, the instruction, taken in context, must avoid any suggestion that an inference of guilty knowledge is obligatory rather than permissive. See id. In this case, the appellant does not fault the language of the

instruction.[4]    Hence, we concentrate our attention on the substantive aspects of the test.

We begin with whether the record sufficiently reflects a claim by the appellant that he lacked guilty knowledge. We think that it does. Singh did not take the stand and, thus, did not directly place in issue the absence of guilty knowledge. However, that circumstance is not dispositive.

The transcript makes manifest (by counsel's opening statement, his choice of witnesses, his cross-examination, his motion for judgment of acquittal, and his summation) that the appellant premised his defense largely on the government's failure to prove guilty knowledge. The first prong of the test

---

[4]The district court stated:

In deciding whether the defendant acted knowingly, you may infer that the defendant had knowledge of a fact if you find that he deliberately closed his eyes to a fact that otherwise would have been obvious to him. In order to find knowledge, you must find that two things have been established. First, that the defendant was aware of a high probability that the fact existed.
Second, that the defendant consciously and deliberately avoided learning of that fact. That is to say, the defendant willfully made himself blind to that fact. It is entirely up to you to determine whether he deliberately closed his eyes to the fact and, if so, what inference, if any should be drawn. However, it is important to bear in mind that mere negligence or mistake in failing to learn the fact is not sufficient. There must be a deliberate effort to remain ignorant of the fact.

-11-

for a willful blindness instruction does not depend on a showing of an explicit denial of guilty knowledge out of the defendant's own mouth; that requirement is satisfied so long as a practical evaluation of the record reveals that the defense was pitched in that direction.  See United States v. Brandon, 17 F.3d 409, 452 n.73 (1st Cir. 1994); United States v. Lizotte, 856 F.2d 341, 343 (1st Cir. 1988).  Here, the appellant's arguments sounded a consistent refrain:  that he lacked guilty knowledge.  No more was exigible.

The government also passes the second half of the test. To be sure, the record contains some evidence which, viewed favorably to the appellant, might suggest a lack of guilty knowledge (e.g., the fact that the phony I-94 form was not carried separately by him, but, instead, had been inserted in his passport).  But at this stage of the proceedings, the evidence must be viewed from a prosecution-friendly vantage point.  See Spinney, 65 F.3d at 233.

By like token, the appellant's claim that the government failed to show any discrete acts of purposeful avoidance is true as far as it goes — but it does not go very far.  The government has no burden to prove willful blindness by direct evidence; it is sufficient if the government adduces evidence that warning signs existed sufficient to put a

-12-

reasonably prudent person on inquiry notice (and, thus, sufficient to permit a factfinder to infer conscious avoidance of guilty knowledge). See United States v. Cunan, 152 F.3d 29, 39 (1st Cir. 1998).

In this instance, the jury reasonably could consider the stark contrast between the mechanics of the appellant's original procurement of a Social Security card and his later venture as a red flag, including, for example, the Globe Agency's request that he leave his passport and the van ride to a remote locale (along with other aliens) to process an ostensibly routine application. See United States v. Bilis, 170 F.3d 88, 93 (1st Cir. 1999); United States v. Camuti, 78 F.3d 738, 744 (1st Cir. 1996). The jury also could consider that the appellant spent $300 for a new set of documents of a kind that he originally had received without charge. Finally, the jury could consider the timing of these events, for the appellant knew (or so the jury could have found) that his visa had long since expired.

To say more would be supererogatory. Even if the appellant did not read (and thus did not know with certitude the contents of) the papers given to him at the Globe Agency, he had ample reason to suspect their false nature. Consequently, the

trial court did not err in giving a willful blindness instruction.

## III.

## Conclusion

We need go no further. After reviewing the briefs and the record with care, we are fully persuaded that the lower court did not go astray either in denying the appellant's motion for judgment of acquittal or in charging the jury. We conclude, therefore, that the appellant was fairly tried and lawfully convicted.

**Affirmed.**