# United States Court of Appeals
## For the First Circuit

No. 99-1349

UNITED STATES OF AMERICA,

Appellee,

v.

NASSER NTEGE SEBAGGALA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Reginald C. Lindsay, U.S. District Judge]

Before

Selya, Circuit Judge,

Cyr, Senior Circuit Judge,

and Lipez, Circuit Judge.

Ralph J. Perrotta for appellant.
Theodore D. Chuang, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief, for appellee.

July 16, 2001

**SELYA, Circuit Judge.** A jury found defendant-appellant Nasser Ntege Sebaggala guilty of two counts of making false statements on United States Customs forms, four counts of bank fraud, and two counts of transporting altered securities. See 18 U.S.C. §§ 1001, 1344, 2314. The district court imposed a fifteen-month incarcerative term and ordered the appellant to pay both a $10,000 fine and $44,000 in restitution. The appellant challenges the sufficiency of the evidence on two counts, as well as various evidentiary rulings. Discerning no error, we affirm the judgment below.

## I. BACKGROUND

We recount the facts in the light most flattering to the government's theory of the case, consistent with record support. See United States v. Singh, 222 F.3d 6, 8 (1st Cir. 2000).

The appellant is a Ugandan national, mayor of the capitol city of Kampala, proprietor of a successful currency exchange bureau in Uganda, and a frequent visitor to this country. On September 29, 1997, he opened an account at a Waltham, Massachusetts, branch of a Boston bank. Over the next few months, he caused four fraudulently altered third-party checks to be deposited in the account. Prior to deposit, each check had been negotiated at a South African financial

-3-

institution and stolen during subsequent processing within the banking system. The Boston bank eventually discovered that these checks were bogus. Before the bank came to that realization, however, the appellant had withdrawn, transferred, or otherwise siphoned off substantial sums for personal use, campaign expenses, and the like.

In the midst of these shenanigans, the appellant went to Great Britain. He reentered the United States at Logan International Airport, Boston, Massachusetts, on January 1, 1998, carrying approximately $108,000 worth of travelers' checks (more than half of which had been reported lost or stolen). He nonetheless presented customs officials with a completed customs form (Form 6059B) in which he declared that he was not carrying currency or monetary instruments in excess of $10,000. When questioned about this declaration, he orally reaffirmed that he had less than $10,000 in currency or monetary instruments in his possession. A customs inspector then asked the appellant how much he was carrying, and the appellant replied that he had $4,000 in travelers' checks.

Apparently dissatisfied with this response, customs officials escorted the appellant to an interview room. When questioned anew, the appellant began to waffle. He admitted carrying $40,000 and completed a new form (Form 4790) containing

-4-

that information. A subsequent consensual search of his luggage revealed the full extent of the travelers' checks in his possession. Customs officials seized the bulk of the travelers' checks and permitted the appellant to go about his business.

These events prompted a federal grand jury to indict the appellant on two counts of making false statements, four counts of bank fraud, and two counts of illegally transporting altered securities in foreign commerce. Following a month-long trial, a jury found him guilty on all counts. This appeal ensued.

## II. ANALYSIS

This appeal encompasses four principal assignments of error. First, the appellant contends that the district court erred in denying his motion for judgment of acquittal, Fed. R. Crim. P. 29, on the false statement counts. Second, he assigns error to the court's exclusion of proffered expert testimony. Third, he maintains that the court erred in allowing rebuttal evidence. Fourth, he posits that the court irretrievably prejudiced him by permitting the introduction of an unduly large number of the seized travelers' checks. We address these asseverations sequentially.

### A. __The Rule 29 Motion__.

Because the appellant's arguments about the sufficiency of the evidence on the first and second "false statement" counts differ from each other, we treat the two counts separately. As to both counts, however, we review the district court's denial of the motion for judgment of acquittal de novo. Singh, 222 F.3d at 9. The test is whether the evidence, construed favorably to the government, permitted rational jurors to conclude, beyond a reasonable doubt, that the defendant was guilty as charged. Id. This test sets the bar quite high — and the appellant fails to clear it on either count.

**1. The First False Statement ("Less Than $10,000").** In order to convict a defendant of making a false statement under 18 U.S.C. § 1001, the prosecution must prove that the defendant, in a matter within the jurisdiction of the United States government, knowingly made a material statement to the government, which was false. United States v. Notarantonio, 758 F.2d 777, 785 (1st Cir. 1985). The appellant concedes falsity and the government's jurisdiction over customs matters, but argues vociferously that he did not knowingly make the first false statement because he misunderstood the question and, in all events, lacked knowledge that travelers' checks were included within the definition of "monetary instruments."

This argument is unpersuasive:  the customs form on which the appellant made his initial declaration referred specifically to travelers' checks and made crystal clear that they were reportable monetary instruments.  What is more, the government adduced evidence that the appellant had answered other questions on the customs form accurately; and that, on a prior visit to the United States, he had responded to an inquiry about "how much" he was carrying by alluding to the amount of travelers' checks in his possession.  Then, too, the government adduced circumstantial evidence which strongly indicated that the first false statement was not the result of a misunderstanding:  on this record, a rational jury surely could have inferred that the appellant prevaricated in order to conceal his possession of a large cache of stolen and altered travelers' checks.[1]  To cinch matters, the government presented proof sufficient to ground a reasonable inference that the appellant had the facility not only to understand the inquiry contained on the form but also to appreciate the definitions incorporated therein.  This evidence revealed that the appellant had earned both a general certificate of education and a

[1]This conclusion is buttressed by the fact that even after customs officials informed him orally that travelers' checks had to be reported, the appellant gave a second false statement as to the total amount of travelers' checks in his possession.

business administration diploma from British educational institutions; that he had reviewed and discussed English language materials with George Colvin, an American diplomat, and Ted Kaster, an American serving as Uganda's honorary consul; and that various persons (including the customs inspectors with whom he dealt) found him able to communicate in English without difficulty.

We see little point in rehearsing the minutiae of the government's proof. It suffices to say that, on this record, a finding of scienter was clearly supportable. See Singh, 222 F.3d at 10 (finding sufficient evidence that the defendant, who answered other questions on Social Security forms intelligently and was able to communicate with INS officials in English, had knowledge of false statements); United States v. Rodriguez, 592 F.2d 553, 557 (9th Cir. 1979) (holding that defendant's execution of a customs form that clearly explained the currency reporting requirement was sufficient to show that he knowingly made a false statement).

The appellant has a fallback position: he points out that he admitted, the second time around, to carrying over $10,000 in currency equivalents. He treats this second declaration as "amending" the first and, analogizing to cases involving perjury, e.g., United States v. Scivola, 766 F.2d 37,

43-46 (1st Cir. 1985); United States v. Goguen, 723 F.2d 1012, 1016-18 (1st Cir. 1983), he says that this "amendment" negated his earlier false statement.

The analogy is not apt. Although an individual sometimes can avoid a perjury prosecution by recanting a prior false statement, that result flows from a specific statutory provision applicable only to perjury cases.[2] The statute under which the appellant was charged and convicted is devoid of any comparable safe harbor; it simply provides for criminal consequences if a person "knowingly and willfully makes any materially false, fictitious, or fraudulent statement or representation" in a matter within the government's jurisdiction. 18 U.S.C. § 1001. The appellant cites no authority that would support transplanting the provisions of section 1623(d) into the unreceptive soil of section 1001. For

---

[2]The perjury statute provides in pertinent part:

> Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declaration admits such declaration to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

18 U.S.C. § 1623(d).

our part, we see no basis for writing into section 1001 a recantation defense that Congress chose to omit. After all, "[c]ourts may not create their own limitations on legislation, no matter how alluring the policy arguments for doing so." Brogan v. United States, 522 U.S. 398, 408 (1998).

We hasten to add that the appellant's argument would fail even if the criteria found in 18 U.S.C. § 1623(d) were imported into prosecutions brought under 18 U.S.C. § 1001. In order effectively to recant a prior perjurious statement, the declarant must make an outright retraction and repudiation. See Scivola, 766 F.2d at 45. He also must "explain unambiguously and specifically" the respects in which his earlier answer was false. Goguen, 723 F.2d at 1018. In this case, the appellant never tendered either an outright retraction or a meaningful explanation of his first false statement: he did nothing more than substitute a second false statement for it. The core purpose of the recantation provision is "to encourage truthful testimony." United States v. Moore, 613 F.2d 1029, 1040 (D.C. Cir. 1979) (citing legislative history). In light of this purpose, we do not believe that a person can recant simply by replacing one lie with another.

2. **The Second False Statement ("$40,000").** The appellant asserts that as long as he reported possession of over

-10-

$10,000 in currency or currency equivalents, any inaccuracy in the total amount reported was immaterial (and, thus, his second false statement was not violative of 18 U.S.C. § 1001). Although the appellant's underlying premise is correct — materiality is an element of a section 1001 offense, United States v. Arcadipane, 41 F.3d 1, 7 (1st Cir. 1994) — this assertion lacks force.

The controlling legal principle is well-settled. The test of materiality is whether the false statement in question had a natural tendency to influence, or was capable of influencing, a governmental function. Id.; Notarantonio, 758 F.2d at 785. Thus, if a statement could have provoked governmental action, it is material regardless of whether the agency actually relied upon it. United States v. Corsino, 812 F.2d 26, 31 (1st Cir. 1987); United States v. Alemany Rivera, 781 F.2d 229, 234 (1st Cir. 1985).

The evidence presented at trial was sufficient to support a reasonable inference that the appellant's second false statement — his claim that he possessed $40,000 in travelers' checks — was material. The second false statement was inscribed on a form that specifically required a declaration of the total amount of currency or monetary instruments being transported. The form explained quite plainly that a failure to disclose the

-11-

correct amount would subject the declarant to criminal or civil penalties. Testimony at the trial indicated that the amount reported by a person entering the country bears directly upon customs officials' decisions about what further action (if any) should be taken (e.g., whether to seize the currency or currency equivalents in the declarant's possession, whether to investigate the matter further, etc.). Given this testimony, it seems self-evident that an underreporting of some $68,000, comprising more than 150% of the amount falsely reported, had the potential to influence customs officials' actions. See, e.g., United States v. Yuzary, 55 F.3d 47, 48 (2d Cir. 1995) (upholding conviction under 18 U.S.C. § 1001 when defendant was carrying $480,000 but reported only $30,000); United States v. Masters, 612 F.2d 1117, 1122 (9th Cir. 1979) (affirming section 1001 conviction for underreporting of $22,670); cf. United States v. McGough, 510 F.2d 598, 603 (5th Cir. 1975) (finding that understatements in financial statements had the capacity to influence the conduct of a government function and thus were material to false statement charges under section 1001). We conclude, therefore, that the government adduced sufficient evidence to satisfy the materiality element of section 1001 in respect to the second false statement.

-12-

## B. **The Proffered Expert Testimony.**

The appellant next assigns error to the district court's refusal to allow a proffered expert witness, Dr. Aloysius Lugira, to testify on the linguistic and cultural traits of the Baganda tribe (to which the appellant belongs). The appellant argues that this testimony, if admitted, would have aided the jury in assessing his ability to understand the forms that he signed (and, therefore, his culpability vel non on the two false statement counts).

Federal Rule of Evidence 702 provides in relevant part that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise," as long as certain conditions are satisfied. When the issue is whether expert testimony will (or will not) materially assist a jury within the intendment of this rule, trial courts enjoy considerable latitude in deciding whether to admit or exclude it. See United States v. Ladd, 885 F.2d 954, 959 (1st Cir. 1989); United States v. Wilson, 798 F.2d 509, 517 (1st Cir. 1986). As we wrote some fourteen years ago:

> The trial judge has a hands-on familiarity with the nuances of the case — nuances which

> may not survive transplantation into a cold appellate record. Thus, the district court's assessment of what will or will not assist the jury is entitled to considerable deference in the Rule 702 milieu.

United States v. Hoffman, 832 F.2d 1299, 1310 (1st Cir. 1987).

We review the district court's rulings on the admission or exclusion of expert testimony for abuse of discretion. United States v. Montas, 41 F.3d 775, 783 (1st Cir. 1994). We discern no such abuse in the lower court's refusal to admit the proffered testimony anent linguistic and cultural traits associated with the Baganda tribe. The court considered the proffer fully and concluded that Dr. Lugira's proposed testimony was grounded primarily in "anecdotal experiences" and was "speculative at best." In the court's view, this testimony would not materially assist the jury in assessing the appellant's ability to comprehend customs forms. We explain briefly why this determination was well within the encincture of the lower court's discretion.

To the extent that the proffered testimony concerned Bagandan cultural tribal traits and customs (including affability), the connection between it and the issues in the case seems tenuous at best. To the extent that the proffered testimony concerned tribal forms of nonverbal communication, the appellant employed none in this instance (and, thus, the

-14-

testimony seems totally irrelevant).  Finally, to the extent that the proffered testimony concerned linguistic aptitude, it was simply unnecessary.

One of the criteria for the admission of expert testimony under Rule 702 is whether a lay person can be expected to decide the issue intelligently without an expert's help.  See United States v. Salimonu, 182 F.3d 63, 73-74 (1st Cir. 1999); United States v. Brien, 59 F.3d 274, 277 (1st Cir. 1995); see also Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998).  Here, common sense supports the district court's determination that jurors would understand, without the aid of expert testimony, that an individual whose primary language is other than English might have difficulty comprehending bureaucratic forms.

### C.  **The Rebuttal Evidence**.

The appellant next complains that the district court erroneously permitted the government to call rebuttal witnesses regarding his proficiency in the English language.  This complaint need not occupy us for long.  Appellate courts traditionally afford trial courts a wide berth in respect to regulating the scope of rebuttal testimony.  See Geders v. United States, 425 U.S. 80, 86-87 (1976); Faigin v. Kelly, 184 F.3d 67, 85 (1st Cir. 1999).  We review challenges to such

rulings for abuse of discretion, Faigin, 184 F.3d at 85; United States v. LiCausi, 167 F.3d 36, 52 (1st Cir. 1999), and we find none here.

In his case in chief, the appellant presented several witnesses, some of them Ugandan nationals, who testified that he had difficulty speaking and understanding English. To counter this evidence, the government sought to present rebuttal witnesses who had found the appellant proficient in reading and speaking English. We think that it was permissible for the district court to allow the government to proceed in this fashion. It is a bedrock principle that "[r]ebuttal evidence may be introduced to explain, repel, contradict or disprove an adversary's proof," United States v. Laboy, 909 F.2d 581, 588 (1st Cir. 1990), and this case is a classic example of the genre. Consequently, we reject the appellant's third assignment of error.

## D. **Rule 403.**

The appellant's final argument posits that the district court denied him a fair trial on the bank fraud and transportation of altered securities counts by allowing the government to introduce, over objection, the mass of travelers' checks seized at the airport. The appellant claims that this

blizzard of stolen and altered paper amounted to "bad act overkill" which overshadowed the real issues in the case and compromised the fairness of the trial.

We set the stage. The appellant filed two pretrial motions: a motion in limine to exclude anticipated government evidence and a motion for relief from prejudicial joinder. By these motions, he sought either to bar introduction of the seized travelers' checks or to sever the false statement charges from the remainder of the indictment. The district court denied both motions. It found that the stolen and altered travelers' checks had distinct probative value in regard to the false statement counts because they provided a likely motive for attempting to deceive the customs officials. It also found that the travelers' checks were relevant as to the other charges and that the danger of unfair prejudice did not substantially outweigh their probative value.

The checks were admitted en masse at trial. The appellant now challenges the district court's denial of his motion in limine and simultaneously challenges the denial of his post-trial motion for a new trial (which raised essentially the same point). He does not, however, appeal from the denial of the motion for severance.

-17-

A two-pronged framework implementing Federal Rule of Evidence 404(b) governs the admissibility of "bad act" evidence.[3] First, the proffered evidence must not merely show a defendant's reprehensible character or predisposition towards knavery, but, rather, must possess some special relevance to a disputed issue in the case. Udemba v. Nicoli, 237 F.3d 8, 15 (1st Cir. 2001); United States v. Devin, 918 F.2d 280, 286 (1st Cir. 1990). Even if the evidence so qualifies, it still must run a second gauntlet; Rule 404(b) incorporates sub silentio the prophylaxis of Federal Rule of Evidence 403.[4] This means that the evidence,

_____

[3]The rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b).

[4]The latter rule provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

although relevant, nonetheless must be rejected if its likely prejudicial impact substantially outweighs its likely probative worth. Veranda Beach Club Ltd. P'ship v. W. Sur. Co., 936 F.2d 1364, 1373 (1st Cir. 1991); Devin, 918 F.2d at 286.

We review the trial judge's decision to admit or exclude Rule 404(b) evidence for abuse of discretion. United States v. Guyon, 27 F.3d 723, 729 (1st Cir. 1994); United States v. Hadfield, 918 F.2d 987, 994-95 (1st Cir. 1990). In this instance, no such abuse occurred. The disputed evidence easily passes the initial Rule 404(b) screen. As the district court recognized, the stolen and altered travelers' checks were probative of motive on the false statement counts; their existence furnished a cogent reason for the appellant to lie to the customs inspectors about the value of the monetary instruments in his possession.

By the same token, the seized travelers' checks also were probative of scienter in respect to the bank fraud and transportation of altered securities counts. The majority of the travelers' checks in the appellant's possession displayed a large rubber stamp that concealed an underlying bank processing stamp. This same model stamp was used to modify three of the four checks involved in the bank fraud counts. Two of these same checks — which were boosted, respectively, from 99¢ to $39,000, and from $2,340.43 to $99,000 — formed the basis for

the transportation counts. Moreover, a significant number of the travelers' checks were stolen from a single financial institution, Standard Bank of South Africa, as were three of the checks involved in the bank fraud counts. Again, the transportation counts were founded on two of these same checks. In short, the similarities shared by the travelers' checks and the third-party checks that formed the basis of the other charges sufficed to show the requisite special relevance. See, e.g., United States v. Bice-Bey, 701 F.2d 1086, 1089 (4th Cir. 1983) (finding evidence of prior fraudulent credit-card transactions relevant to rebut claim of innocent involvement in subsequent credit-card fraud).

The challenged evidence also passes the second screen. We have observed before that "[o]nly rarely — and in extraordinarily compelling circumstances — will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." Freeman v. Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir. 1988). There is nothing so extraordinary about the circumstances here as would impel us to second-guess the district court's careful calibration of the probative value/prejudicial effect scales. Evidence of uncharged fraud activity that is substantially similar to the activity underlying a charged fraud scheme often is admitted to

show knowledge or intent to defraud with respect to the charged fraud scheme. See, e.g., Guyon, 27 F.3d at 729; United States v. Rodriguez-Estrada, 877 F.2d 153, 156 (1st Cir. 1989); United States v. Scelzo, 810 F.2d 2, 4 (1st Cir. 1987). And, we see little risk here that the evidence — which had obvious probative value — was likely to have overwhelmed the jurors' emotions or led them to behave irrationally. We therefore decline to disturb the district court's fact-sensitive judgment concerning the admissibility of the travelers' checks under the Rule 403 balancing test.

## III. CONCLUSION

We need go no further. To the extent that the appellant advances other arguments, they are insubstantial and do not require comment. It suffices to say that the appellant was fairly tried and justly convicted. The judgment below must, therefore, be

**Affirmed.**