# United States Court of Appeals
## For the First Circuit

No. 18-1980

UNITED STATES OF AMERICA,

Appellee,

v.

RITA LUTHRA,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Mark G. Mastroianni, U.S. District Judge]

Before

Thompson, Barron, and Boudin,
Circuit Judges.

Dana A. Curhan, with whom Thomas M. Hoopes and LibbyHoopes, P.C. were on brief, for appellant.
Andrew E. Lelling, United States Attorney, with whom Mark T. Quinlivan, Assistant United States Attorney, was on brief, for appellee.

August 6, 2020

**BOUDIN, <u>Circuit Judge</u>.** This is an appeal by Rita Luthra, a doctor based in Springfield, Massachusetts, whom a jury convicted on two counts: aiding and abetting the wrongful disclosure of individually identifiable health information, 18 U.S.C. § 2; 42 U.S.C. § 1320d-6, and obstructing a criminal investigation of a health care offense, 18 U.S.C. § 1518(a).

At trial, the government presented a detailed case; Luthra presented no case beyond her claims that the evidence did not permit a conviction. The district court sentenced Luthra only to a year's probation, but the convictions may adversely affect Luthra in her professional capacity. The serious convictions and the light penalty reflect a tension not uncommon in regulatory cases.

Luthra's convictions stem from an investigation not into Luthra's activities but those of Warner Chilcott, a pharmaceutical company. Chilcott ran a speakers program aimed at publicizing the company's drugs to clinicians. These prescription drugs included Actonel and Atelvia, which treat osteoporosis. In 2010, Warner Chilcott sales representative Jose Cid signed Luthra to serve as a speaker about Actonel and Atelvia. Between October 2010 and November 2011, Warner Chilcott paid Luthra $23,500 for speaking at approximately 31 events.

In addition to speaking about Atelvia, Luthra prescribed the drug to her patients. Many insurance companies, however, did

not cover Atelvia because a less expensive generic drug was available. To get coverage, the prescribing physician needed to complete a prior authorization form explaining why a patient required Atelvia. As insurance companies denied coverage, the prior authorization forms piled up.

Luthra asked Cid to help her medical assistant, Joanne Rivera, complete the forms. Rivera testified that Cid assisted Rivera on more than one occasion. Cid confirmed that Luthra saw them working on the prior authorization forms in Luthra's office. In one instance, Luthra stopped and spoke with Cid, who said that he was helping Rivera while pointing to a patient's record on the desk.

Eventually, the federal Department of Health and Human Services ("HHS") began investigating Warner Chilcott for potential kickback violations and health care fraud, and federal law enforcement agents interviewed Luthra. Rivera testified that, shortly after Luthra's interview, Luthra called her and said that Cid got them in trouble. Luthra then asked Rivera to tell the agents that they never showed Cid patient records. The next day Luthra repeated her instruction and told Rivera to say that Luthra was not in the office on Fridays.

The jury convicted Luthra on count one, aiding and abetting the wrongful disclosure of individually identifiable health information, and count three, obstructing a criminal

investigation of a health care offense. It acquitted her on count two, witness tampering in violation of 18 U.S.C. § 1512(b)(3). This appeal addresses Luthra's claim that the evidence was insufficient for conviction.

We review the district court's decision de novo, drawing all reasonable inferences in favor of the jury verdict, asking whether any rational factfinder could have found the essential elements of the crime beyond a reasonable doubt. United States v. Martínez-Mercado, 919 F.3d 91, 98 (1st Cir. 2019). The credibility of witnesses in support of the verdict is largely assumed. United States v. Moran, 312 F.3d 480, 487 (1st Cir. 2002).

As to count one, Luthra concedes that Cid accessed patient medical information but argues that the government failed to prove that Luthra knew Cid accessed protected patient information. On the contrary, Rivera and Cid collectively testified that Luthra witnessed Cid assist Rivera complete the prior authorization forms, which included protected patient information; stopped at their desk and spoke with Cid, who told Luthra that he was assisting Rivera and gestured to a patient file; and signed at least one prior authorization form on which Cid wrote a patient's current medications.

Further, Luthra instructed Rivera to not tell federal law enforcement agents that they showed Cid patient records and to inform agents that Luthra was not in the office on Fridays when

Cid assisted Rivera. Inferring from this evidence that Luthra knew Cid accessed protected information is neither "unreasonable, insupportable, [nor] overly speculative." United States v. Spinney, 65 F.3d 231, 234 (1st Cir. 1995).

Luthra's critique of the count three conviction also fails. The burden on the government was to show that Luthra

> willfully prevent[ed], obstruct[ed], misl[ed], delay[ed] or attempt[ed] to prevent, obstruct, mislead, or delay the communication of information or records relating to a violation of a Federal health care offense to a criminal investigator[.]

18 U.S.C. § 1518. The government claimed that Luthra lied in her second interview when she stated, to explain her compensation, that Warner Chilcott paid her to author a research paper.

The government presented Warner Chilcott statements of work that show that Luthra was paid for speaker events for the time period during which she claimed she was paid to author a paper. Luthra failed to produce the paper. These statements, alongside testimony and notes from investigating agents, permitted the jury to disbelieve Luthra's statement that she authored a research paper for Warner Chilcott. Martínez-Mercado, 919 F.3d at 98.

Lastly, Luthra argues that the government failed to prove that her statement was "relevant to or otherwise affected the investigation." The undeveloped and perfunctory nature of Luthra's argument, which consists of two sentences and a citation

- 5 -

to out-of-circuit precedent, offers reason enough for us to disregard this claim.  United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

Modern medical practice entails endless regulation and frightening penalties.  But without minimizing the burdens on overworked doctors who now risk much for their patients, a jury could and did find that Luthra made statements she knew were not true.  The sentencing judge went as far as he could in softening the sanction.

Affirmed.